IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION

MARY AINSWORTH, Widow and Personal
Representative of JAMES T. AINSWORTH, Deceased,
Individually, and on Behalf of ALL Wrongful Death
Beneficiaries, including Minor Children S. A., D. A.,
and M. A., for whom Mary P. Ainsworth is Mother
and Next Friend                                                                                              PLAINTIFFS

v.                                                                            CIVIL ACTION NO. 2:10-CV-236-KS-MTP

CARGOTEC USA, INC. f/k/a HIAB, INC.
f/k/a CARGOTEC, INC.; and MOFFETT
ENGINEERING, LTD.                                                                                           DEFENDANTS

**MEMORANDUM OPINION AND ORDER**

For the reasons stated below, the Court denies Defendant Moffett Engineering Ltd.'s Motion to Dismiss for Lack of Jurisdiction [7]. Counsel for all parties shall contact the Magistrate Judge within three (3) days of the entry of this order to schedule a Case Management Conference.

**I. BACKGROUND**

This is a product liability action filed by the widow and children of James T. Ainsworth, an employee at Wayne Farms – a chicken processor in Ovett, Mississippi. The decedent was struck and killed by a forklift being operated by a coworker. Plaintiffs allege that various defects in the forklift caused the accident.

1

The forklift in question was designed and manufactured by Defendant Moffett Engineering, Ltd., an Irish corporation. Moffett is party to a "Sales and Distribution Agreement" with Cargotec USA Inc., a Delaware corporation with its principal place of business in Ohio. Pursuant to this agreement, Cargotec has the exclusive right to act as Moffett's representative for the sale of forklifts in the United States. Moffett designs and manufactures the forklifts in Ireland and then sells them to Cargotec, who markets and sells them throughout the United States.

The main question presented by Moffett's Motion to Dismiss for Lack of Jurisdiction [7] is whether a nonresident defendant should foresee that it may be haled into court in a forum where its only contact was that its product had been marketed and sold there by a third party under a marketing and sales agreement which defines the sales territory as the entire United States. As the Court shall explain, the United States Court of Appeals for the Fifth Circuit has already answered this question in the affirmative.

## II. STANDARD OF REVIEW

"When a nonresident defendant presents a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the district court's jurisdiction over the nonresident. The court may determine the jurisdictional issue by receiving affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery." *Allred v. Moore & Peterson*, 117 F.3d 278, 281 (5th Cir.

1997) (quoting *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985)). However, where the Court "rules on a motion to dismiss for lack of personal jurisdiction without an evidentiary hearing, the plaintiff need only make a prima facie case that jurisdiction is proper." *Paz v. Brush Engineered Materials, Inc.*, 445 F.3d 809, 812 (5th Cir. 2006) (citing *Quick Techs., Inc. v. Sage Group, PLC*, 313 F.3d 338, 343 (5th Cir. 2002)). While the Court is not limited to consideration of only the allegations in the plaintiff's complaint, it must accept the "uncontroverted allegations" contained therein as true. *Id.* (citing *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 2005)). Furthermore, "all conflicts in the facts must be resolved in favor of the plaintiffs for purposes of determining whether a prima facie case for personal jurisdiction has been established." *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1165 (5th Cir. 1985).

### III. DISCUSSION

A "federal court sitting in diversity may exercise personal jurisdiction over a non-resident defendant (1) as allowed under the state's long-arm statute; and (2) to the extent permitted by the Due Process Clause of the Fourteenth Amendment." *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 398 (5th Cir. 2009).

*A.     Mississippi's Long-Arm Statute*

Mississippi's long-arm statute provides:

> Any . . . foreign or other corporation not qualified under the Constitution and laws of this state as to doing business herein, who shall make a contract with

> a resident of this state to be performed in whole or in part by any party in this state, or who shall commit a tort in whole or in part in this state against a resident or nonresident of this state, or who shall do any business or perform any character of work or service in this state, shall by such act or acts be deemed to be doing business in Mississippi and shall thereby be subjected to the jurisdiction of the courts of this state.

MISS. CODE ANN. § 13-3-57 (2010). Plaintiffs contend that this Court possesses personal jurisdiction over Moffett under the long-arm statute's tort prong. Moffett did not address the long-arm statute in its briefing.

> The United States Court of Appeals for the Fifth Circuit has observed:
>
> Under Mississippi law, a tort is not complete until an injury is suffered. If the injury occurs in Mississippi, the tort is committed, at least in part, in the state, and the requirements of the long-arm statute are satisfied. The tortfeasor's presence in Mississippi is not required; causing an injury that occurs in the state is sufficient.

*Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 270-71 (5th Cir. 2006) (citations omitted). Furthermore, the Mississippi Supreme Court has applied the tort prong of the statute in a product liability case and held:

> [A] nonresident manufacturer of a dangerously defective or unsafe product who places it in interstate commerce for the purpose of distribution and ultimate sale to consumers in other States, whether with a specific intent that it be distributed, sold and used in this State or not, may be subjected to a personam action for damages in the courts of this State by such consumer who may be injured in this State as a result of its defective or unsafe condition.

*Smith v. Temco, Inc.*, 252 So. 2d 212, 216 (Miss. 1971). As there is no dispute that the injury at issue in this case occurred in Mississippi, the long-arm statute's requirements have been

4

met.

## B. *Due Process*

"To satisfy the requirements of due process, the plaintiff must demonstrate: '(1) that the non-resident purposely availed himself of the benefits and protections of the forum state by establishing minimum contacts with the state; and (2) that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice.'" *Mullins*, 564 F.3d at 398 (quoting *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008)); *see also Clemens v. McNamee*, 615 F.3d 374, 378 (5th Cir. 2010). "The 'constitutional touchstone' of the inquiry . . . is whether the defendant 'purposefully established minimum contacts in the forum State.'" *Seiferth*, 472 F.3d at 271 (quoting *Asahi Metal Indus. Co. v. Super. Ct.*, 480 U.S. 102, 108-09, 107 S. Ct. 1026, 94 L. Ed. 2d 92 (1987)). "'Jurisdiction may be general or specific,' depending on the nature of the defendant's forum-related contacts." *Jackson v. Tanfoglio Giuseppe S.R.L.*, 615 F.3d 579, 584 (5th Cir. 2010). Plaintiffs confined their briefing to the specific contacts prong. Therefore, the Court will assume that the parties agree that Moffett possesses insufficient general contacts with Mississippi to create personal jurisdiction.[1]

---

[1]Regardless, the Fifth Circuit has held:

General jurisdiction may be found when the defendant's contacts with the forum state are substantial, continuous, and systematic. The continuous and systematic contacts test is a difficult one to meet, requiring extensive

Generally, "[s]pecific personal jurisdiction exists when 'the defendant has purposefully directed his activities at residents of the forum . . . and the litigation results from alleged injuries that arise out of or relate to those activities.'" *Clemens*, 615 F.3d at 378 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S. Ct. 2174, 85 L. Ed. 2d. 528 (1985); *Jones v. Petty-Ray Geophysical Geosource, Inc.*, 954 F.2d 1061, 1068 n. 9 (5th Cir. 1992)). The Court "applies a three-step analysis to determine specific jurisdiction: (1) whether the defendant has minimum contacts with the forum state; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable." *Jackson*, 615 F.3d at 585 (citing *Seiferth*, 472 F.3d at 271).

1.   *Minimum Contacts*

When evaluating the minimum contacts prong, the Fifth Circuit has "applied a stream-of-commerce principle to permit the assertion of specific jurisdiction over

---

contacts between a defendant and a forum. To confer general jurisdiction, a defendant must have a business presence in the forum state. Injecting a product, even in substantial volume, in to a forum's stream of commerce, without more, does not support general jurisdiction. Advertising and marketing through national media is insufficient, as are isolated visits to a forum.

*Id.* (citations and punctuation omitted). Accordingly, it does not appear that Plaintiffs have presented sufficient evidence to support the exercise of personal jurisdiction based on general contacts.

nonresident defendants that send a defective product into a forum." *Id.* (citing *Nuovo Pignone, SPA v. Storman Asia* M/V, 310 F.3d 374, 380 (5th Cir. 2002)). The court held:

> Where a nonresident's contact with the forum state "stems from a product, sold or manufactured by the foreign defendant, which has caused harm in the forum state, the court has [specific] jurisdiction if it finds that the defendant delivered the product into the stream of commerce with the expectation that it would be purchased or used by consumers in the forum state."

*Id.* (quoting *Nuovo Pignone*, 310 F.3d at 380) (alteration original). Accordingly, to establish this Court's personal jurisdiction under the stream-of-commerce theory, a plaintiff must only demonstrate the "mere foreseeability" that the nonresident defendant "might be haled into court because it purposely availed itself of the benefits of the forum state." *Id.*

The plaintiff is not required to show that the nonresident defendant "purposely directed its activities to the forum." *Id.* (citing *Ruston Gas Turbines v. Donaldson Co., Inc.*, 9 F.3d 415, 419 (5th Cir. 1993)) (punctuation omitted). The stream-of-commerce principle refers to "the regular and anticipated flow of products from manufacturer to distribution to retail sale. As long as a participant in this process is aware that the final product is being marketed in the forum State, the possibility of a lawsuit there cannot come as a surprise." *Asahi Metal Indus. Co.*, 480 U.S. at 117, 107 S. Ct. 1026 (Brennan, J., concurring). Indeed, "[d]eriving revenue from such commercial activity is the quid pro quo for requiring the defendant to suffer suit in the foreign forum." *Choice Healthcare, Inc. v. Kaiser Found. Health Plan*, 615 F.3d 364, 373 (5th Cir. 2010).

Moffett is an Irish corporation, and its principal place of business is in Dundalk, County Louth, Ireland. According to the evidence currently before the Court, Moffett has never maintained a physical presence in Mississippi. It does not own, possess, or use any property in Mississippi. It has never had any officers, employees, or agents stationed in Mississippi, and it has never sent any of its employees to Mississippi for business purposes. It has never sought authority from the Mississippi Secretary of State to conduct business in Mississippi. It has never directly shipped or sold any of its products to customers here, and it has never directly solicited business from any company located in Mississippi.

Moffett sells all of its products to Cargotec, who then markets and sells Moffett's products throughout the United States. Cargotec has the exclusive right to market and sell Moffett's products pursuant to a contract which specifically defines the United States of America as Cargotec's sales territory. Cargotec affirmed in its responses to Plaintiffs' interrogatories that it sells or markets Moffett products in all fifty states. Moffett makes no attempt to limit the territory in which Cargotec sells its products.

Moffett does not communicate with the end-purchasers of its products in any fashion. Indeed, Moffett is not even aware of the identities or locations of any specific purchasers. Cargotec takes orders from customers, and then relays the specifications to Moffett. According to the evidence currently before the Court, Moffett remains wholly unaware of who the purchaser is or where they are located throughout the process.

8

Cargotec directs its marketing efforts at two industries, in particular: the drywall industry and the poultry industry. The record is unclear as to the extent to which Moffett was aware that Cargotec focused its marketing efforts on these two industries.

Since 2000, Moffett has shipped over €254,000,000.00 worth of forklifts into the United States. From 2000 through September, 2010, Moffett sold 13,073 forklifts to Cargotec. Cargotec sold 203 of those forklifts to customers in Mississippi.[2] Therefore, customers in Mississippi have accounted for at least 1.55 % of Moffett's United States sales over the last decade, or roughly €3,950,000.00.

In *Bean Dredging Corporation v. Dredge Technology Corporation*, 744 F.2d 1081 (5th Cir. 1984),[3] the United States Court of Appeals for the Fifth Circuit addressed a situation similar to the present case. There, Rogers-Olympic – a Washington corporation – manufactured and sold steel castings to Abex Corporation, which used them in manufacturing cylinders in California. *Id.* at 1082. The cylinders were ultimately used by Avondale Shipyard, Inc. to construct dredges in Louisiana. *Id.* Bean Dredging Corporation brought a product liability claim against the suppliers and manufacturers of one such dredge, who brought

---

[2]Of course, this number excludes any forklifts sold to third-party retailers who then sold them in Mississippi.

[3]The *Bean Dredging* opinion has been cited with approval by a subsequent Fifth Circuit panel and the United States Supreme Court. *See Asahi Metal Indus. Co.*, 480 U.S. at 111, 117, 107 S. Ct. 1026; *Irving v. Owens-Corning Fiberglass Corp.*, 864 F.2d 383, 385 (5th Cir. 1989).

9

a third-party action against Rogers-Olympic. *Id.* Rogers-Olympic moved to dismiss for lack of personal jurisdiction. *Id.*

Rogers-Olympic contracted by purchase order with Abex and "had no knowledge of the end-product into which the castings would be incorporated." *Id.* It had never done business in Louisiana, solicited business there, sent employees there, or owned property there, and it had no knowledge that the steel castings would eventually end up there. *Id.* Rogers-Olympic produced 1,000 to 15,000 castings each year, and it had major customers in nine states – none of which were Louisiana. *Id.*

The court held that the company had sufficient contacts with Louisiana to justify the exercise of personal jurisdiction, citing the stream-of-commerce theory. *Id.* at 1083-85. The court observed that "the number of contacts with the forum state is not determinative of the 'minimum contacts' test; rather, 'the contacts must support an inference that the nonresident defendant purposefully availed himself of the benefits of the forum state.'" *Id.* (quoting *Quasha v. Shale Dev. Corp.*, 667 F.2d 483, 488 (5th Cir. 1982)). It stated: "[E]ven activities outside one state can fulfill this requirement if they have reasonably foreseeable consequences within the state." *Id.*

Rogers-Olympic made "no attempt to limit the states in which its castings would be sold and used, albeit as a component part of a larger product." *Id.* at 1085. The Court observed that while Rogers-Olympic "did not originate the distribution system" or "control

it," it placed its product in "a stream of commerce destined for retail sale [in finished products] throughout the United States." *Id.* (quoting *Nelson v. Park Indus., Inc.*, 717 F.2d 1120, 1126 (7th Cir. 1983)). It made no difference that it only manufactured a component of a component of the end-product at issue; that it only produced thousands of steel castings per year, rather than millions; or that only two castings were incorporated into the end-product at issue. *Id.* The key factor was Rogers-Olympic's intention to sell the castings "throughout the United States" and the "reasonably foreseeable consequences" of that decision. *Id.* at 1083-85.

In the present case, Moffett entered into a sales and distribution agreement which granted Cargotec the right to act as its representative for the sale of products in a sales territory encompassing the entire United States. Cargotec's 30(b)(6) representative testified that Keith Quigley, Moffett's managing director, was aware that Cargotec marketed Moffett's products nationwide. Moffett admits that it has not attempted to limit the states in which Cargotec markets and sells its products, and it is undisputed that Cargotec's agents have performed sales calls to prospective customers in Mississippi. Cargotec's marketing and sales efforts have led to the sale of 203 Moffett forklifts in Mississippi, accounting for roughly €3,950,000.00 in gross revenue. Therefore, in light of the Fifth Circuit's opinion in *Bean Dredging*, the Court finds that Moffett has sufficient contact with the state of Mississippi – under the stream-of-commerce theory – to justify the exercise of

11

personal jurisdiction.

Moffett attempts to distinguish *Bean Dredging* by noting that the non-resident defendant in that case was located in the United States and sold its products directly to customers, rather than using an intermediary for its sales and marketing efforts. First, it is irrelevant that the nonresident defendant in *Bean Dredging* was located in the United States, rather than a foreign country. Washington is no less foreign a jurisdiction to Louisiana than Ireland is to Mississippi. While Moffett's location in Ireland may be relevant to determining whether the exercise of personal jurisdiction would be fair and reasonable, it is irrelevant to the issue of minimum contacts.

Moffett's use of an intermediary is likewise irrelevant, as it intended for Cargotec to market and sell its products throughout the United States and made no effort to limit the sales territory. In *Bean Dredging*, the nonresident defendant sold its product to a distributor whose actions it did not control, who then sold it to another party. *Id.* at 1085. Indeed, in that case, the connection between the nonresident defendant and the end-product was less direct than here. The nonresident defendant in *Bean Dredging* produced a component of a component of an end-product, whereas it is undisputed that Moffett's forklifts are largely finished products when they are shipped to Cargotec for sale.

    *2.    Connection to Forum-Related Contacts*

In the second prong of the analysis, the Court determines "whether the plaintiff's

cause of action arises out of or results from the defendant's forum-related contacts." *Jackson*, 615 F.3d at 585. Plaintiff's cause of action clearly arises from Moffett's actions in designing, manufacturing, and placing into the stream of commerce the forklift in question.

   3.   *Fair and Reasonable*

"If the plaintiff successfully satisfies the first two prongs, the burden shifts to the defendant to defeat jurisdiction by showing that its exercise would be unfair or unreasonable." *Seiferth*, 472 F.3d at 271 (citing *Nuovo Pignone*, 310 F.3d at 382). Moffett first argues that it has no jurisdictional contacts with Mississippi. As the Court noted above, Moffett has sufficient contact with Mississippi under a stream-of-commerce theory to justify the exercise of personal jurisdiction in this case. Accordingly, the Court disregards this point as a mere rearguing of the minimum contacts prong of the analysis.

Next, Moffett argues that the substantial distance between Ireland and Mississippi would subject it to significant inconvenience. The Court examines five factors when determining whether the exercise of personal jurisdiction would be fair and reasonable:

> (1) the burden upon the nonresident defendant to litigate in that forum; (2) the interests of the forum state; (3) the plaintiff's interest in obtaining relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the several states' shared interest in furthering substantive social policies.

*Clemens*, 615 F.3d at 387 (citing *Asahi Metal Indus. Co.*, 480 U.S. at 113, 107 S. Ct. 1026).

The first factor weighs in favor of dismissal. "The unique burdens placed upon one

who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders." *Asahi Metal Indus. Co.*, 480 U.S. at 114, 107 S. Ct. 1026. However, the second factor weighs in favor of exercising jurisdiction, as forum states have significant interests in protecting their residents from harm. *Walk Haydel & Assocs. v. Coastal Power Prod. Co.*, 517 F.3d 235, 245 (5th Cir. 2008). The third factor also weighs in favor of exercising jurisdiction. Plaintiffs brought design and manufacturing defect claims, and it is undisputed that Moffett, rather than Cargotec, designed and manufactured the forklift at issue. Assuming that Plaintiff's allegations are true, Plaintiff's ability to obtain relief would likely be hampered in Moffett's absence.

The fourth factor is inapplicable, as it appears to assume that a plaintiff unable to establish personal jurisdiction over a nonresident defendant in one state will initiate an action in another state. However, the "interstate judicial system" has no stake in this matter, as it involves a dispute between a United States citizen and an Irish corporation. Likewise, the fifth factor is inapplicable, as this matter does not involve a dispute between citizens of two different states. To the extent the fifth factor could be applied to this dispute, the record contains no evidence regarding Ireland's "substantive social policies."

While the Supreme Court has stressed the significant weight that should be given to the burden placed upon a foreign defendant forced to defend itself in the United States,

that burden is mitigated in the present case. In briefing, Moffett merely cited the geographical distance between Mississippi and Ireland, without providing any specific burdens presented by litigating this matter in Mississippi. The Court notes that Moffett has already retained local counsel, and that Moffett has defended itself in this Circuit on a previous occasion. *See Harris v. J. B. Hunt Transp., Inc.*, No. A-06-CA-097 LY, 2207 U.S. Dist. LEXIS 56652 (W.D. Tex. Aug. 3, 2007). The record also shows that Moffett personnel already travel to the United States two to three times a year to visit Cargotec's offices in Ohio. Furthermore, geographical distance, standing alone, does not present the litigation burden that it once did. Parties and counsel are able to communicate and conduct discovery electronically, and both this Court and the United States Court of Appeals for the Fifth Circuit observe mandatory electronic case filing.

For all the reasons stated above, the Court finds that the burden imposed on Moffett by being subject to litigation in this jurisdiction is outweighed by Mississippi's interest in protecting its citizens from harm and Plaintiffs' interest in obtaining relief. Therefore, the exercise of personal jurisdiction over Moffett in this case is both fair and reasonable.

## IV. CONCLUSION

For all the reasons stated above, the Court denies Defendant Moffett Engineering Ltd.'s Motion to Dismiss for Lack of Jurisdiction [7]. Counsel for both parties shall contact the Magistrate Judge within three (3) days of the entry of this order to schedule a Case

Management Conference.

SO ORDERED AND ADJUDGED this 9th day of May, 2011.

*s/ Keith Starrett*
UNITED STATES DISTRICT JUDGE