**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION**

| | |
|---|---|
| **MARY AINSWORTH, Widow and Personal Representative of JAMES T. AINSWORTH, Deceased, Individually, and on Behalf of ALL Wrongful Death Beneficiaries, including Minor Children S. A., D. A., and M. A., for whom Mary P. Ainsworth is Mother and Next Friend** | **PLAINTIFFS** |
| **v.** | **CIVIL ACTION NO. 2:10-CV-236-KS-MTP** |
| **CARGOTEC USA, INC. f/k/a HIAB, INC. f/k/a CARGOTEC, INC.; and MOFFETT ENGINEERING, LTD.** | **DEFENDANTS** |

### MEMORANDUM OPINION AND ORDER

For the reasons stated below, the Court **denies** Defendant Moffett Engineering, Ltd.'s Motion for Reconsideration [59, 65].

### I. BACKGROUND

This is a wrongful death and product liability case. Plaintiffs are the survivors of a Mississippi resident who was struck and killed by a forklift designed and manufactured by Defendant Moffett Engineering, Ltd. ("Moffett"). Moffett is an Irish corporation, and its principal place of business is in Dundalk, County Louth, Ireland. According to the evidence currently before the Court, Moffett has never maintained a physical presence in Mississippi. It does not own, possess, or use any property in Mississippi. It has never had any officers, employees, or agents stationed in Mississippi, and it has never sent any of its employees to Mississippi for business purposes. It has never sought authority from the Mississippi Secretary of State to conduct business in Mississippi.

1

It has never directly shipped or sold any of its products to customers here, and it has never directly solicited business from any company located in Mississippi.

Moffett sells all of its products to Defendant Cargotec USA, Inc. ("Cargotec"), who then markets and sells Moffett's products throughout the United States. Cargotec has the exclusive right to market and sell Moffett's products pursuant to a contract which specifically defines the United States of America as Cargotec's sales territory. Cargotec sells or markets Moffett products in all fifty states. Moffett does not attempt to limit the territory in which Cargotec sells its products. Further, Moffett does not communicate with the end-purchasers of its products in any fashion, and it is not aware of their identities or locations. Cargotec takes orders from customers and relays the specifications to Moffett. According to the evidence currently before the Court, Moffett remains wholly unaware of who the purchaser is or where they are located throughout the process.

Cargotec directs its marketing efforts at two particular industries: the drywall industry and the poultry industry. The record is unclear as to the extent to which Moffett was aware that Cargotec focused its marketing efforts on these two industries. However, Moffett personnel travel to the United States two or three times a year to discuss sales forecasts with Cargotec personnel. During these meetings, they discuss whether there are particular issues with a product line that might affect sales and whether certain improvements to Moffett's designs might increase sales. Additionally, Moffett personnel periodically travel to the United States for trade shows.

Since 2000, Moffett has shipped over €254,000,000.00 worth of forklifts into the United States. From 2000 through September, 2010, Moffett sold 13,073 forklifts to Cargotec. Cargotec

sold 203 of those forklifts to customers in Mississippi.[1] Therefore, customers in Mississippi have accounted for at least 1.55 % of Moffett's United States sales over the last decade, or roughly €3,950,000.00.

The Court previously denied Moffett's Motion to Dismiss for lack of personal jurisdiction. *Ainsworth v. Cargotec USA, Inc.*, No. 2:10-CV-236-KS-MTP, 2011 U.S. Dist. LEXIS 49665, at *21 (S.D. Miss. May 9, 2011). The Court held that Moffett was subject to personal jurisdiction in this Court because 1) it had entered into a sales and distribution agreement which specifically defined Cargotec's sales territory as the entire United States, 2) it was aware that Cargotec marketed its product's throughout the entire United States, and 3) it made no attempt to limit the scope of Cargotec's marketing efforts. *Id.* at *8-*16. Therefore, pursuant to the Fifth Circuit's decision in *Bean Dredging Corporation v. Dredge Technology Corporation*, 744 F. 2d 1081 (5th Cir. 1984), the Court found that Plaintiffs had satisfied the minimum contacts prong of the due process analysis because they presented evidence that Moffett placed its product in the stream of commerce destined for sale throughout the United States, and it was foreseeable that they would be subject to suit in Mississippi. *Ainsworth*, 2011 U.S. Dist. LEXIS 49665 at *16.

After the Court's decision, the Supreme Court of the United States issued its opinion in *J. Mcintyre Machinery, Ltd. v. Robert Nicastro*, 131 S. Ct. 2780, 180 L. Ed. 2d 765 (2011). Moffett subsequently filed a Motion for Reconsideration [59, 65], arguing that the *Mcintyre* decision governs this dispute, and that the Court should reconsider its earlier decision.

## II. STANDARD OF REVIEW

---

[1] Of course, this number excludes any forklifts sold to third-party retailers who then sold them in Mississippi.

Motions for reconsideration are either addressed under Rule 59(e) or Rule 60(b). *Shepherd v. Int'l Paper Co.*, 372 F.3d 326, 328 n. 1 (5th Cir. 2004). The timing of the motion determines which rule applies. *Id.* It has been the practice in this jurisdiction that motions for reconsideration filed within ten days of the order of which reconsideration is sought are considered under Rule 59(e), and anything filed after that point is considered under Rule 60(b). *Id.* However, the deadline for filing Rule 59(e) motions was increased to twenty-eight days. *See* FED. R. CIV. P. 59(e). Therefore, a motion for reconsideration filed and served within twenty-eight days of the filing of the order to be reconsidered is reviewed under Rule 59(e), while anything filed and served after that is reviewed under Rule 60(b). *See Yarrito v. United States*, No. 5:11-CV-44-DCB-JMR, 2011 U.S. Dist. LEXIS 52312, at *1 (S.D. Miss. May 16, 2011); *Gunn v. City of Cleveland*, No. 2:09-CV-114-MPM, 2011 U.S. Dist. LEXIS 83927, at *3-*4 (N.D. Miss. July 29, 2011).

Moffett filed its Motion for Reconsideration [59] on July 21, 2011 – more than twenty-eight days after the entry of the Court's Memorandum Opinion and Order [50] denying its Motion to Dismiss [7]. Accordingly, Moffett requests reconsideration pursuant to Rule 60(b)(6), which provides: "On motion and just terms, the court may relieve a party . . . from a final judgment, order, or proceeding for . . . any . . . reason that justifies relief." FED. R. CIV. P. 60(b)(6). Moffett argues that the *McIntyre* decision justifies reconsideration of the Court's previous order.

"Rule 60(b)(6) is a grand reservoir of equitable power to do justice in a particular case when relief is not warranted by" the other clauses of Rule 60(b), but the Fifth Circuit has "narrowly circumscribed its availability, holding that Rule 60(b)(6) relief will be granted only if extraordinary circumstances are present." *Balentine v. Thaler*, 626 F.3d 842, 846 (5th Cir. 2010). The Fifth Circuit has generally held that "[c]hanges in decisional law based on constitutional principles are not of

4

themselves extraordinary circumstances sufficient to justify Rule 60(b)(6) relief." *Batts v. Tow-Motor Forklift Co.*, 66 F.3d 743, 749 (5th Cir. 1995); *see also Celestine v. Petroleos*, 108 F. App'x 180, 184 (5th Cir. 2004). However, this Court has reconsidered an opinion pursuant to Rule 60(b)(6) after a significant change in the law governing a jurisdictional issue. *Queen v. Am. Gen. Fin., Inc.*, 351 F. Supp. 2d 576, 577 (S.D. Miss. 2005) (court reexamined opinion regarding improper joinder issue after *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568 (5th Cir. 2004)). Likewise, the present motion implicates the Court's authority to enter any judgment with regard to Moffett. Therefore, despite the general rule that changes in decisional law are not typically sufficient to justify Rule 60(b)(6) relief, the Court, in its discretion, will consider Moffett's motion.

Accordingly, the question before the Court is whether the Supreme Court's decision in *McIntyre* alters this Court's decision as to whether the Due Process Clause of the Fourteenth Amendment permits the Court to exercise personal jurisdiction over Moffett.

### III. DISCUSSION

A "federal court sitting in diversity may exercise personal jurisdiction over a non-resident defendant (1) as allowed under the state's long-arm statute; and (2) to the extent permitted by the Due Process Clause of the Fourteenth Amendment." *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 398 (5th Cir. 2009). "To satisfy the requirements of due process, the plaintiff must demonstrate: (1) that the non-resident purposely availed himself of the benefits and protections of the forum state by establishing minimum contacts with the state; and (2) that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice." *Id.* (punctuation omitted); *see also Clemens v. McNamee*, 615 F.3d 374, 378 (5th Cir. 2010). "The 'constitutional touchstone' of the inquiry . . . is whether the defendant purposefully established minimum contacts in the forum State."

5

*Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006) (punctuation omitted).

"Jurisdiction may be general or specific, depending on the nature of the defendant's forum-related contacts." *Jackson v. Tanfoglio Giuseppe S.R.L.*, 615 F.3d 579, 584 (5th Cir. 2010) (punctuation omitted). "Specific personal jurisdiction exists when the defendant has purposefully directed his activities at residents of the forum . . . and the litigation results from alleged injuries that arise out of or relate to those activities." *Clemens*, 615 F.3d at 378 (punctuation omitted). The Court "applies a three-step analysis to determine specific jurisdiction: (1) whether the defendant has minimum contacts with the forum state; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable." *Jackson*, 615 F.3d at 585. When evaluating the minimum contacts prong, the Fifth Circuit has "applied a stream-of-commerce principle to permit the assertion of specific jurisdiction over nonresident defendants that send a defective product into a forum." *Id.* Moffett's motion concerns the application of the "stream-of-commerce" theory in light of *McIntyre*. The Court must first provide the jurisprudential context of the decision.

In *World-Wide Volkswagen Corporation v. Woodson*, 444 U.S. 286, 288-89, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980), plaintiffs sued an automobile retailer and distributor – both New York corporations – in an Oklahoma court. The plaintiffs alleged that design defects in an automobile caused them to suffer injuries during an accident. *Id.* at 288, 100 S. Ct. 559. They argued that it was Constitutionally permissible for an Oklahoma court to exercise personal jurisdiction over the New York defendants because it was "foreseeable" that an automobile sold in New York could cause an injury in Oklahoma, due to the vehicle's inherently mobile nature. *Id.* at 295, 100 S. Ct. 559.

The Supreme Court explained that "foreseeability alone ha[d] never been a sufficient

6

benchmark for personal jurisdiction under the Due Process Clause." *Id.* (punctuation omitted). "[T]he foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum State. Rather, it is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *Id.* at 297, 100 S. Ct. 559. The Court explained:

> When a corporation purposefully avails itself of the privilege of conducting activities within the forum State . . . , it has clear notice that it is subject to suit there . . . . Hence if the sale of a product of a manufacturer or distributor . . . is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve directly or indirectly, the market for its product in other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owner or to others. The forum State does not exceed its powers under the Due Process Claus if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State.

*Id.* at 297-98, 100 S. Ct. 559.

The operations of the automobile retailer and distributor were limited to New York, New Jersey, and Connecticut. *Id.* at 298, 100 S. Ct. 559. While it was foreseeable that purchasers of automobiles in those states may take them to Oklahoma, "the mere unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State." *Id.* (punctuation omitted). Accordingly, the defendants had no contacts with Oklahoma, and it was impermissible for an Oklahoma court to exercise personal jurisdiction over them. *Id.* at 299, 100 S. Ct. 559.

The Supreme Court addressed the stream-of-commerce theory once again in *Asahi Metal Industry Co. v. Superior Court of California*, 480 U.S. 102, 107 S. Ct. 1026, 94 L. Ed. 2d 92 (1987). In *Asahi Metal*, the plaintiff was injured in a motorcycle accident allegedly caused by a defective tire valve assembly; he sued the valve assembly's Japanese manufacturer in California. *Id.* at 106,

7

107 S. Ct. 1026. The Japanese defendant manufactured the valve assembly in Japan and sold it to several different tire manufacturers, including one in Taiwan. *Id.* The Taiwanese tire manufacturer incorporated the Japanese valve assembly into tires which were sold throughout the world. *Id.* The One of those tires was incorporated into the plaintiff's motorcycle, which he purchased in California. *Id.* The Court addressed whether:

> . . . the mere awareness on the part of a foreign defendant that the components it manufactured, sold, and delivered outside the United States would reach the forum State in the stream of commerce constitutes "minimum contacts" between the defendant and the forum State such that the exercise of jurisdiction "does not offend 'traditional notions of fair play and substantial justice.'"

*Id.* at 105, 107 S. Ct. 1026.

The Court split its decision as to whether mere foreseeability was enough to subject the foreign manufacturer to personal jurisdiction in a California court under the stream-of-commerce theory. *Id.* Justice O'Connor penned the opinion for one four-justice plurality, holding that "a defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State." *Id.* at 112, 107 S. Ct. 1026. Accordingly, Justice O'Connor's plurality held that the mere foreseeability that a product would end up in the forum state was insufficient to meet the requirements of the Due Process Clause, without some additional conduct directed at the state. *Id.* at 112-13, 107 S. Ct. 1026.

Justice Brennan, in an opinion concurring in part and in the judgment – also on behalf of four justices – concluded that a defendant's awareness "that the final product is being marketed in the forum State," without any additional conduct directed toward the forum state, is sufficient to meet the requirements of the Due Process Clause. *Id.* at 116-17, 107 S. Ct. 1026. In his view:

> A defendant who has placed goods in the stream of commerce benefits economically from the retail sale of the final product in the forum State, and indirectly benefits from the State's laws that regulate and facilitate commercial activity. These benefits accrue regardless of whether that participant directly conducts business in the forum State, or engages in additional conduct directed toward that State.

*Id.* at 117, 107 S. Ct. 1026. Accordingly, although the Japanese manufacturer "did not design or control the system of distribution that carried its valve assemblies into California, [it] was aware of the distribution system's operation, and it knew that it would benefit economically from the sale in California of products incorporating its components." *Id.* at 121, 107 S. Ct. 1026. Therefore, the Brennan plurality found that the plaintiff had satisfied the minimum contacts prong of the due process analysis. *Id.*[2]

While some Circuits follow Justice O'Connor's analysis, the Fifth Circuit follows Justice Brennan's analysis. *Choice Healthcare, Inc. v. Kaiser Found. Health Plan*, 615 F.3d 364, 373 (5th Cir. 2010). Accordingly, it has been the law in this Circuit that "mere foreseeability or awareness is a constitutionally sufficient basis for personal jurisdiction if the defendant's product made its way into the forum state while still in the stream of commerce." *Luv n' Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 470 (5th Cir. 2006). Phrased differently: a court "does not offend due process by exercising jurisdiction over an entity that 'delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State.'" *Id.* (quoting *World Wide Volkswagen*, 444 U.S. at 298, 100 S. Ct. 559). The same reasoning underpinned the Fifth Circuit's decision in *Bean Dredging Corp.*, 744 F.2d at 1083-84, which largely provided the basis for this Court's previous decision regarding the exercise of personal jurisdiction as to Moffett. *See*

---

[2]The Brennan plurality nonetheless found that the exercise of personal jurisdiction was improper, as the exercise of jurisdiction would not comport with traditional notions of fair play and substantial justice. *Id.* at 480 U.S. at 117, 107 S. Ct. 1026.

*Ainsworth*, 2011 U.S. Dist. LEXIS 49665 at *12-*16.

In *J. McIntyre Machinery, Ltd. v. Nicastro*, 131 S. Ct. 2780, 2789-90, 180 L. Ed. 2d 765 (2011), Justice Kennedy delivered a plurality opinion eschewing Justice Brennan's analysis in *Asahi* in favor of Justice O'Connor's approach. However, Justice Breyer penned a concurring opinion, in which he decided the case on narrower grounds and declined to address the *Asahi* split. *Id.* at 2791. "When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgment on the narrowest grounds." *Garland v. Roy*, 615 F.3d 391, 399 (5th Cir. 2010) (punctuation omitted). Accordingly, when applying *McIntyre*, this Court must follow Justice Breyer's concurring opinion.

*McIntyre*, like the cases discussed above, involved a foreign manufacturer which sold its products in the United States through an independent distributor. *McIntyre*, 131 S. Ct. at 2791. A New Jersey court decided that the foreign manufacturer had sufficient contacts with the state to be subject to suit there. *Id.* at 2791. The state court relied on the following facts in reaching this determination: 1) the independent distributor "on one occasion sold and shipped one machine to a New Jersey manufacturer;" 2) the foreign manufacturer "permitted, indeed wanted, its independent [distributor] to sell its machines to anyone in America willing to buy them;" and 3) representatives of the foreign manufacturer periodically attended trade shows in the United States, but not in New Jersey. *Id.*

Justice Breyer wrote: "None of our precedents finds that a single isolated sale, even if accompanied by the kind of sales effort indicated here, is sufficient" to support the assertion of jurisdiction by a state court. *Id.* at 2792. "Rather, . . . previous holdings suggest the contrary." *Id.*

10

Breyer noted that both *Asahi* pluralities "strongly suggested that a single sale of a product in a State does not constitute an adequate basis for asserting jurisdiction over an out-of-state defendant, even if that defendant places his goods in the stream of commerce, fully aware (and hoping) that such a sale will take place." *Id.* The facts found by the New Jersey Supreme Court showed "no regular . . . flow or regular course of sales in New Jersey." *Id.* (punctuation omitted). Likewise, there was no evidence of "something more, such as special state-related design, advertising, advice, marketing, or anything else." *Id.* (punctuation omitted). The plaintiff failed to show a "specific effort by [the foreign manufacturer] to sell in New Jersey," and he "introduced no list of potential New Jersey customers who might, for example, have regularly attended trade shows." *Id.* Finally, the plaintiff did not otherwise show that the manufacturer "purposefully availed itself of the privilege of conducting" business in New Jersey, or that it "delivered its goods in the stream of commerce with the expectation that they will be purchased by New Jersey users." *Id.* (punctuation omitted).

In summary, rather than select one of the Supreme Court's past opinions as the controlling precedent to be applied in every case thereafter, Justice Breyer merely found that the plaintiff had failed to present evidence of purposeful availment under *any* of the Court's past opinions. He did not choose one of the *Asahi* plurality opinions as the controlling precedent, and he did not reject the notion that "mere foreseeability or awareness is a constitutionally sufficient basis for personal jurisdiction if the defendant's product made its way into the forum state while still in the stream of commerce." *See Luv n' Care, Ltd.*, 438 F.3d at 470. Indeed, Justice Breyer noted evidentiary shortcomings which implicated both of the *Asahi* plurality opinions. *McIntyre*, 131 S. Ct. at 2792 (noting both the lack of evidence of "something more" than placing the product in the stream of commerce, and the lack of evidence of the defendant's awareness that it may be purchased in the

11

forum state).

As Justice Breyer declined to choose between the *Asahi* plurality opinions, *McIntyre* is rather limited in its applicability. It does not provide the Court with grounds to depart from the Fifth Circuit precedents[3] establishing Justice Brennan's *Asahi* opinion as the controlling analysis. At best, it is applicable to cases presenting the same factual scenario that it does. This is not such a case. In *McIntyre*, the record only contained evidence that a single machine manufactured by the foreign defendant had been sold and shipped to the forum state. In the present case, it is undisputed that Cargotec has sold 203 Moffett forklifts to customers in Mississippi over the past decade, accounting for 1.55% of Moffett's United States sales during that time period and generating approximately €3,950,000.00 – or roughly $5,350,000.00 – in sales. That is a significant difference – one which, in the Court's opinion, removes the present case from the scope of *McIntyre*'s applicability.

Accordingly, the Court holds that Justice Brennan's *Asahi Metal* analysis and the Fifth Circuit's analysis in *Bean Dredging* remain the controlling precedents in this case. Plaintiffs have presented sufficient evidence to show that Moffett knew its products were being marketed throughout the entire United States and made no attempt to limit the scope of Cargotec's marketing efforts. Furthermore, Plaintiffs have presented evidence that a substantial number of Moffett machines have been sold in Mississippi over the last decade. Accordingly, it was foreseeable to Moffett that its products would be purchased by consumers in the state of Mississippi. Therefore, Moffett is subject to the jurisdiction of this Court.

## IV. CONCLUSION

---

[3]*Choice Healthcare, Inc.*, 615 F.3d at 373; *Luv N' Care, Ltd.*, 438 F.3d at 471 n. 9; *Ruston Gas Turbines, Inc. v. Donaldson Co.*, 9 F.3d 415, 420 (5th Cir. 1993).

For all the reasons stated above, the Court denies Defendant Moffett Engineering Ltd.'s Motion for Reconsideration [59, 65].

SO ORDERED AND ADJUDGED this 23rd day of September, 2011.

*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE