IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION


MARY P. AINSWORTH                                                    PLAINTIFF

v.                                          CIVIL ACTION NO. 2:10-CV-236-KS-MTP

CARGOTEC USA, INC. et al.                                          DEFENDANTS


### MEMORANDUM OPINION AND ORDER

For the reasons stated below, the Court **grants in part and denies in part** Defendant's Motion for Summary Judgment [163] and **denies as moot** Defendant's Motions to Strike [167, 195].

### I. BACKGROUND

James T. Ainsworth was an employee of Wayne Farms, a chicken producer in Jones County, Mississippi. On October 1, 2007, Mr. Ainsworth was working as a "catcher," picking up chickens and placing them in cages for transport. One of his coworkers, Samuel Walters, operated a Moffett P5000 forklift, loading the chicken cages – each one ninety-six inches long, forty-five inches wide, and fifty-one and three-quarters inches high – on to trucks. While returning an empty cage to the chicken house, Mr. Samuels struck Mr. Ainsworth from behind and ran over him with the loaded forklift. Mr. Ainsworth was fatally injured.

Mary P. Ainsworth, Mr. Ainsworth's widow, filed this lawsuit against Moffett Engineering, Ltd., the forklift's manufacturer. She asserted design and warning defect claims under the Mississippi Product Liability Act ("MPLA"). MISS. CODE ANN. § 11-1-63. She also claims that Moffett negligently failed to train the employees of Wayne

Farms to safely operate the forklift. Moffett filed a Motion for Summary Judgment [163] and related evidentiary motions [167, 195], which are now ripe for review.

## II. MOTION FOR SUMMARY JUDGMENT [163]

Rule 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010). "Where the burden of production at trial ultimately rests on the nonmovant, the movant must merely demonstrate an absence of evidentiary support in the record for the nonmovant's case." *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 812 (5th Cir. 2010) (punctuation omitted). The nonmovant "must come forward with specific facts showing that there is a genuine issue for trial." *Id.* (punctuation omitted). "An issue is material if its resolution could affect the outcome of the action." *Sierra Club, Inc.*, 627 F.3d at 138. "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Cuadra*, 626 F.3d at 812.

The Court is not permitted to make credibility determinations or weigh the evidence. *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009). When deciding whether a genuine fact issue exists, "the court must view the facts and the inference to be drawn therefrom in the light most favorable to the nonmoving party." *Sierra Club, Inc.*, 627 F.3d at 138. However, "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue

for trial." *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002).

## A.      *Warning Defect*

Plaintiff claims that the Moffett forklift did not adequately warn drivers of limited visibility when fully loaded. Defendant argues that this claim fails because it is undisputed that the forklift's driver, Samuel Walters, already knew that the forklift had blind spots and that a full load impaired visibility.

The MPLA provides, in pertinent part:

(a)      The manufacturer . . . of the product shall not be liable if the claimant does not prove by the preponderance of the evidence that at the time the product left the control of the manufacturer or seller:

     (i)      . . . The product was defective because it failed to contain adequate warnings or instructions, . . . ; and

* * *

     (iii)      The defective and unreasonably dangerous condition of the product proximately caused the damages for which recovery is sought.

MISS. CODE ANN. § 11-1-63(a). The Mississippi Supreme Court explained the statute's causation requirement:

> [I]n a failure-to-warn case, plaintiff must prove that the alleged defective warnings rendered the product unreasonably dangerous to the user or consumer; and that this condition proximately caused the damages for which recovery is sought. A key element of causation for a failure-to-warn claim is proof of a causal link between the plaintiff's injuries and the product's allegedly lacking a warning or having an inadequate warning. In other words, the failure to warn must be the proximate cause of the injuries suffered or it is irrelevant.

*3M Co. v. Johnson*, 895 So. 2d 151, 166 (Miss. 2005) (citations omitted). A plaintiff

3

must offer evidence, therefore, "that some other warning would have given them additional information that they did not already know and that they would have acted upon that new information in a manner that would have avoided the injuries." *Id.*

When asked whether he could "see over the cage," Samuel Walters – the forklift's driver – answered [163-5]: "No," that he could not see "what was in front of [him] and where [he was] going . . . ." He explained:

> You can't see in front of them things that good. You've got to . . . do your best to watch what you're doing, and some things is just out of your control. . . . There's vehicles, of course, that we know have blind spots and you just have to watch yourself on these. And one of the things about these is that like in any vehicle that's out there, . . . in my opinion is that you do have a certain degree of blind spots that you can't see coming.

He said, in this case "the blind spot was directly in front of you." Likewise, Kenneth Knight, a Wayne Farms employee, testified [195-3] that forklift drivers had told him "that you can't see that good" with a cage on the forklift, and Plaintiff [171] testified that her husband knew that "sometimes the vision was blocked" when driving the forklift.

James Gieger, another Wayne Farms employee at the time of the accident, testified [177] that a Moffett employee provided safety training to Wayne Farms employees which included "talk about blind spots" in response to "[q]uestions . . . about being able to see around the load because of where the operator was sitting on the piece of equipment." According to the sign-in list [179], both Mr. Ainsworth and Mr. Walters attended Moffett's training session. Gieger also testified that Mr. Knight led a safety training session titled "Dealing With Blind Spots," which concerned "the blind spots

4

when moving the vehicles . . . ." He explained:

> [W]e knew when operating the Moffett, the driver operators had
> complained or had talked about not being able to see this particular area,
> so what this would have been was giving them a way, telling them how
> they should clear that particular side of their vehicle. . . . It was very
> much to make them aware that they needed to be out of the blind spots
> and to tell them – to let the operators actually – the best that I can recall,
> is that the operators – you know, they wanted to make sure that truck
> drivers knew to stay out of their particular line of sight.

According to the sign-in list [179], both Mr. Ainsworth and Mr. Walters attended the

training session.

Finally, Plaintiff's expert, Tyler Kress, testified [164] that "clearly . . . if they're

traveling forward, which I think is foreseeable, . . . it's hard to keep a clear view if

there's a large load that obstructs one's view," and that "[w]e have evidence that there's

a large load, and . . . everyone agrees that it obstructs part of your forward view . . . ."

He agreed that "operators know from their own eyeballs where they can see and where

they cannot see."

In summary, the record contains undisputed evidence that Wayne Farms

employees were already aware that a forklift driver's visibility was limited when

carrying a load, and that both Mr. Ainsworth (the decedent) and Mr. Walters (the

forklift's driver) received safety training which specifically addressed the forklift's

visibility problems and blind spots. To survive summary judgment on her warning

defect claim, Plaintiff must demonstrate that there exists a genuine dispute of material

fact as to whether a warning "would have given them additional information that they

did not already know and that they would have acted upon that new information in a

manner that would have avoided the injuries." *Id.* Plaintiff failed to provide any such evidence. Therefore, the Court grants Defendant's Motion for Summary Judgment with respect to Plaintiff's warning defect claim.

## B.    *Design Defect*

Plaintiff claims that the forklift was defective in design because it did not contain certain components which would either solve the machine's visibility problems or reduce the risk of the driver hitting a bystander. Plaintiff's expert intends to testify that mirrors, a camera mounted on top of the forklift's mast, and an alarm system to warn bystanders when the forklift is moving forward are all feasible design alternatives that could have been used by Defendant. Defendant argues that Plaintiff has not provided sufficient evidence of a feasible design alternative that would to a reasonable certainty have prevented the harm without impairing the forklift's utility, usefulness, practicality, or desirability.

The MPLA provides, in pertinent part:

(f)    In any action alleging that a product is defective because of its design . . . , the manufacturer . . . shall not be liable if the claimant does not prove by the preponderance of the evidence that at the time the product left the control of the manufacturer . . . :

\* \* \*

(ii)    The product failed to function as expected and there existed a feasible design alternative that would have to a reasonable probability prevented the harm. A feasible design alternative is a design that would have to a reasonable probability prevented the harm without impairing the utility, usefulness, practicality or desirability of the product to users or consumers.

MISS. CODE ANN. § 11-1-63(f). As this Court has previously noted, the statute requires proof of a specific design alternative, rather than a merely conceptual one. *See Graves ex rel. W. A. G. v. Toyota Motor Corp.*, No. 2:09-CV-169, 2012 U.S. Dist. LEXIS 63173, at *11-*13 (S.D. Miss. 2012). "[T]he mere mention of a design alternative by an expert comes well-short of lending evidentiary guidance to a court." *Williams v. Bennett*, 921 So. 2d 1269, 1275 (Miss. 2006). There must be a "basis of comparison from which to determine that the design of the [product] was indeed defective," and the plaintiff must "demonstrate the extent of the risk that the alternative design would have avoided or how the alternative design would have affected [the product's] utility." *Id.* at 1277.[1]

Plaintiff's expert, Tyler Kress, stated in his report that the forklift's blind spots "could have been reduced or minimized . . . through the use of inexpensive mirror components incorporated into the design of the forklift," but he failed to provide any specific information regarding, among other things, the proposed mirrors' shapes, sizes, placement, orientation, or the extent to which they would increase the forklift driver's field of vision.[2] Similarly, Plaintiff's expert mentioned the possibility of a camera system or a forward alarm during his deposition [164, 195-1], but he failed to provide a specific design for such components or engage in the type of comparative analysis

---

[1] *Cf. Guy v. Crown Equip. Corp.*, 394 F.3d 320, 327 (5th Cir. 2004) (where expert never presented a specific feasible design alternative, his opinions were not admissible); *Watkins v. Telsmith, Inc.*, 121 F.3d 984, 992 (5th Cir. 1997) (the proper methodology for proposing alternative designs includes more than just conceptualizing possibilities).

[2] The Court also notes that it is undisputed that forklift did, in fact, have mirrors, as demonstrated by photographs [181] taken the day after the accident.

contemplated by *Williams*, cited above.

Kress also failed to address whether his proposed design alternatives would have to a reasonable probability prevented the accident. He testified: "I haven't been asked to specifically go out and provide a design alternative of the subject design in this case that I believe would eliminate the visibility problem in the poultry industry." When asked whether he was "aware of any design alternative that would be feasible and would to a reasonable probability have prevented the accident in this case," Kress responded: "I don't have an opinion about whether it would have prevented it or not, whether he would have ran over him if it had these design alternatives." Later he testified, "I'm not addressing a specific cause intervention in this case." He also stated that he had not "expressed an opinion" as to whether "additional . . . design changes would have had any causal connection with the outcome . . . ."

In summary, Plaintiff has no evidence of a specific, feasible design alternative that would have to a reasonable probability prevented the accident in which her husband was injured. *See* MISS. CODE ANN. § 11-1-63(f); *Williams*, 921 So. 2d at 1275-77. The testimony from her expert, Tyler Kress, is too general to fulfill the statute's requirement of a feasible design alternative. *See Graves*, 2012 U.S. Dist. LEXIS 63173 at *11-*13. And Kress expressly disclaimed that he was providing any opinion as to causation. *See Williams*, 921 So. 2d at 1277. For these reasons, the Court grants Defendant's Motion for Summary Judgment as to Plaintiff's design defect claim.

## C.    *Negligence*

Defendant argues that Plaintiff's negligence claim is a mere restatement of her

warning defect claim and should, therefore, be dismissed. The Court agrees that general negligence claims based on a defective product are subsumed by the MPLA. *See Gardley-Starks v. Pfizer, Inc.*, 917 F. Supp. 2d 597, 602 (N.D. Miss. 2013); *McSwain v. Sunrise Med., Inc.*, 689 F. Supp. 2d 835, 844-45 (S.D. Miss. 2010). Plaintiff's negligence claim, however, does not arise from a defective product. Rather, it arises from Defendant's alleged failure to train Wayne Farms employees in proper use of the forklift. *See, e.g., Hall v. Miss. Chem. Express, Inc.*, 528 So. 2d 796, 800 (Miss. 1988) (separately addressing product liability claim and negligent failure-to-train claim). Defendant has not addressed Plaintiff's negligent training claim. Therefore, the Court denies Defendant's Motion for Summary Judgment in that respect.

### III. REMAINING MOTIONS [167, 195]

First, Defendant filed a Motion to Strike [167] the designation of Plaintiff's expert, Tyler Kress. Then Defendant filed a Motion to Strike [195] Exhibits 2 and 3 to Plaintiff's Response to Defendant's Motion to Strike the designation. The Court **denies** both motions **as moot**. Even if the Court considers the disputed evidence, Plaintiff can not satisfy the MPLA's requirements, for the reasons stated above.

It is unclear whether Plaintiff intends to present trial testimony from Mr. Kress related to the remaining negligence claim. Based on the content of Defendant's Motion to Strike [167] Kress's designation, the Court assumes that Defendant would object to such testimony. But Defendant provided no argument specific to that issue, and the Court shall not address it here.

### IV. CONCLUSION

For the reasons stated above, the Court **grants in part and denies in part** Defendant's Motion for Summary Judgment [163]. The Court denies the motion with respect to Plaintiff's negligence claim, but the Court grants it in all other respects. The Court also **denies as moot** Defendant's Motions to Strike [167, 195].

SO ORDERED AND ADJUDGED this 30th day of January, 2014.

*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE